UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

REBECCA SHIRRELL,                      )
                                       )
                Plaintiff,             )
                                       )
v.                                     )          Case No. 1:13CV42 SNLJ
                                       )
SAINT FRANCIS MEDICAL CENTER,          )
and LISA MILLER,                       )
                                       )
                Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment and

plaintiff's motion to strike defendants' response to plaintiff's statement of material facts.

This is an employment discrimination case alleging claims under Title VII of the Civil

Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and the Missouri

Human Rights Act ("MHRA"), §§ 213.010 RSMo, *et seq*.  Specifically, plaintiff claims

that defendants terminated her employment because of her religion and her complaints of

discriminatory conduct.  Both motions have been fully briefed and are ripe for

disposition.  For the following reasons, the Court will grant the motion for summary

judgment and deny the motion to strike.

As a preliminary matter, the Court will take up plaintiff's motion to strike

defendants' response to plaintiff's statement of material facts.  Plaintiff contends that

defendants have violated Local Rule 4.01(D) in that defendants' reply brief consists of 15

pages, and their attached response to plaintiff's statement of material facts consists of 37

pages, thereby exceeding the limit of 15 pages for a "motion, memorandum or brief" set forth in Local Rule 4.01(D). Plaintiff requests that the response be stricken. Defendants argue that the response is not subject to the page limit because it is not a "motion, memorandum or brief." The Court finds that the response to plaintiff's statement of material facts, which is filed as Exhibit 1 to defendants' reply brief, does not violate Local Rule 4.01(D). The Court will, therefore, deny the motion to strike. The Court now turns to the defendants' motion for summary judgment.

## I.    **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A

party resisting summary judgment has the burden to designate the specific facts that create a triable controversy.  *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).  Self-serving, conclusory statements without support are not sufficient to defeat summary judgment.  *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

"While employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment."  *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (citing *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999).  There is no separate summary judgment standard for employment discrimination cases, and "it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Id.*

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  *Matsushita,* 475 U.S. at 587; *Woods v. Daimler Chrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue."  *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000).  However, the court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## II.     Facts

The following facts are taken from defendants' statement of uncontroverted facts, plaintiff's statement of material facts, and exhibits in the record.

Plaintiff Rebecca Shirrell received her nursing degree in 1995 and became employed by Saint Francis Medical Center ("SFMC") the same year as a clinical nurse. Plaintiff voluntarily resigned from her employment with SFMC in July 2000. Plaintiff was rehired by SFMC in 2001. Plaintiff elected to work as a part-time registered nurse for SFMC from 2007 through the remainder of her employment with SFMC. She primarily worked weekends.

Lisa Miller worked for SFMC from 1993 to 1996 and returned in 2005 to employment with SFMC. Plaintiff and Miller worked weekend option together for a number of years. Plaintiff is Jewish. Miller is not Jewish. Miller was aware that plaintiff was Jewish and had overheard plaintiff talk about celebrating Hanukkah.

In late February or early March 2012, during a conversation that occurred in plaintiff's presence, Miller made a comment to another co-worker, Clayton Suggs, that she was going to try to "Jew" down, or had "Jewed" down, the seller of a camper to a lower price.[1] Prior to that comment by Miller, plaintiff had not heard Miller or any other co-worker make any offensive comments related to the Jewish faith and did not have any issue with the way she was treated by Miller or other co-workers.

_____

[1] Shirrell testified in her deposition that she believes Miller stated that she had "Jewed them down." Miller testified in her deposition that she stated she was "going to try to Jew him down."

Plaintiff informed her supervisor, Tammy Hahn-Brown, about Miller's offensive comment during a telephone conversation the day after Miller made the comment. Hahn-Brown told Gerry Salter, SFMC Director of Orthopedic Services, about the incident. Hahn-Brown told Salter that she was going to speak with Miller about the incident and that she was going to communicate with staff and remind them of expectations of staff members in conversation. On March 5, 2012, Hahn-Brown posted a copy of the SFMC Harassment Policy on a bulletin board in the nurses' room and sent an e-mail to nurses (including Miller) and nursing assistants informing them to choose their words and actions wisely around patients, families, and co-workers at all times.

Approximately six weeks after Miller's offensive comment, plaintiff informed Hahn-Brown that the work environment had become hostile. Plaintiff alleges that her co-workers gave her the cold shoulder during that time. Plaintiff also claims that Miller asked plaintiff why she had complained to their supervisor and accused plaintiff of trying to get Miller in trouble. Plaintiff admits that she had very little interaction with co-workers during a typical weekend shift and that she never filed a harassment complaint or an internal grievance while employed by SFMC.

In late March or early April 2012, Hahn-Brown announced she was leaving the supervisory position to take a different position within SFMC. Miller applied for the supervisory position. On April 20, 2012, Miller learned she had received the promotion to the position of Nurse Manager of Orthopedics but did not start working in the new position without the supervision of Hahn-Brown until late May 2012.

In late May or early June 2012, Miller brought two patient complaints regarding plaintiff to Salter's attention. Salter told Miller to investigate the complaints. Miller reported the results of her investigation to Salter. The complaints about plaintiff made by patients or family members of patients on May 31, 2012 and June 2, 2012 were labeled as unprofessional conduct. Per the SFMC Progressive Corrective Action Policy, two occurrences of unprofessional conduct results in a suspension, and a suspension results in seven disciplinary points. Salter assessed plaintiff a suspension, worth seven points, based on the two incidents of patient complaints.

By late May 2012, plaintiff had accrued five unscheduled absences within a twelve month period, with the fourth and fifth absences occurring on May 24, 2012 and May 26-27, 2012.[2] Pursuant to the SFMC Absenteeism and Tardiness policy, part-time employees are to receive a written counseling after four unscheduled absences within a twelve month period and a suspension after five unscheduled absences within a twelve month period. Salter gave plaintiff a written warning for her five unscheduled absences within a twelve month period. Under the SFMC Progressive Corrective Action Policy, a written warning is valued at three disciplinary points. Plaintiff does not dispute that she had five unscheduled absences but disputes that the SFMC policies were correctly applied to her. Plaintiff points out that the SFMC Absenteeism and Tardiness policy has a provision for full time employees and a provision for part-time employees working less

---

[2] Under the policy, absence on consecutive days for the same reason is counted as one absence. Accordingly, the May 26 and 27, 2012 absences were counted as one absence.

than 60 hours. Plaintiff alleges that although she was a part-time employee, she worked more than 60 hours and, therefore, the policy did not apply to her.

In late May and early June 2012, plaintiff received two separate oral warnings for her actions on May 17, 2012 and May 31, 2012 that were labeled as reluctance, disinterest, and/or neglect in carrying out responsibilities. Under the SFMC Progressive Corrective Action Policy, each oral warning for reluctance, disinterest, and/or neglect in carrying out responsibilities is valued at one disciplinary point. Plaintiff did not dispute the discipline issued to her for the May 17, 2012 failure to document waste of medication. Plaintiff admits that documentation of a sedation score is important to a patient's record and that she neglected to write a sedation score of a patient on May 31, 2012.

During a meeting on June 6, 2012,[3] plaintiff was informed by Salter that she was being discharged. The disciplinary action form prepared by Salter indicates plaintiff was assessed a total of twelve disciplinary points including: (a) seven disciplinary points for patient and/or family complaints of rudeness occurring on May 31, 2012 and June 2, 2012; (b) three disciplinary points for five unscheduled absences within twelve months; and (c) two disciplinary points for two instances of reluctance, disinterest, and/or neglect in carrying out responsibilities on May 17, 2012 and May 31, 2012. Pursuant to the SFMC Progressive Corrective Action Policy, an employee is discharged if he or she incurs a total of twelve disciplinary points for offenses committed within a twelve month

---

[3] The parties agree that the meeting occurred on June 6, 2012. The Court notes, however, that the disciplinary action form documenting the termination of plaintiff's employment is dated June 5, 2012 and purports to be signed by plaintiff on June 5, 2012.

period.  Also included in the disciplinary action form was a March 1, 2012 patient

complaint as well as a notation that patient and family complaints are "not a new problem

as a complaint regarding [plaintiff's] behavior toward patients and family members was

addressed in April 2011."

Prior to the discharge, Salter consulted with Human Resources via phone and in

person to make sure Human Resources was in agreement with Salter's process of

assessing disciplinary points to plaintiff.  The decision to discharge plaintiff occurred

during a meeting Salter had with Teri Krietzer of Human Resources.  According to Salter,

he made the final decision to discharge plaintiff based on plaintiff accruing twelve points.

Miller attended the meeting with Salter and Krietzer.  The meeting took place before

Salter prepared the disciplinary action form.

Miller was present for the June 6, 2012 discharge meeting but did not say anything

to plaintiff during the meeting.  Plaintiff does not make any claim that Lisa Miller was

the final decision maker with respect to the termination of her employment with SFMC.

Plaintiff did not have any complaints or concerns about any comments Salter made about

the Jewish faith or religion during her employment with SFMC

On July 17, 2012, plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission and the Missouri Commission on Human Rights

alleging religious discrimination, retaliation related to her complaint against Miller, and

the termination of her employment. The EEOC and the MCHR issued Notices of Right to

Sue on December 14, 2012, and January 9, 2013, respectively.  Plaintiff filed this action

on March 4, 2013.

### III.    Discussion

Plaintiff alleges Title VII and MHRA claims against defendant SFMC and MHRA claims against defendant Miller alleging the defendants discharged her because of her religion and because of her complaints of discriminatory conduct (Miller's offensive comment and the alleged hostile work environment).

### A.    Title VII claims - Defendant SFMC

### 1.    Religious Discrimination

Plaintiff contends she was discharged in violation of Title VII because she is Jewish.  For a Title VII claim to survive a motion for summary judgment, plaintiff must present direct evidence of unlawful discrimination or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  "To prove intentional discrimination through direct proof, a plaintiff must establish 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'"  *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir. 2003)).  Under the burden-shifting framework, plaintiff must first establish a *prima facie* case of discrimination.  *Jackson v. United Parcel Serv., Inc.,* 643 F.3d 1081, 1086 (8th Cir. 2011).  "A *prima facie* case creates a rebuttable presumption of discrimination."  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).  The burden then shifts to the defendant to prove a legitimate, nondiscriminatory reason for its action.  *Id.*  If defendant establishes such a reason, the

presumption disappears, and the burden shifts back to the plaintiff to prove that defendant's proffered reason is a pretext for unlawful discrimination.  *Id.*

To establish a prima facie case for religious discrimination, plaintiff must show that (1) she is a member of a protected class because of her religious affiliation or beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)."  *Gibson*, 670 F.3d at 854 (quoting *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)); *Brasch v. Peters*, 479 F.Supp.2d 1045, 1070 (E.D. Mo. 2007).

Plaintiff has not presented any direct evidence of religious discrimination. Therefore, this Court will analyze plaintiff's claim under the *McDonnell Douglas* burden-shifting framework.  SFMC argues that plaintiff's claim fails because she was not meeting the legitimate expectations of her employer and the circumstances do not give rise to an inference of religious discrimination.

SFMC contends that plaintiff cannot establish that she was meeting the legitimate expectations of her employer because of patient complaints and other violations of SFMC policies that led to the termination of plaintiff's employment.  Plaintiff argues that she must show only that she possessed the basic skills necessary for the performance of the job, not that she was doing it satisfactorily.  Plaintiff cites *Haigh v. Gelita USA, Inc.*, 632 F.3d 464 (8th Cir. 2011) in support of her position.  In *Haigh*, the Eighth Circuit noted a conflict in its previous opinions as to whether a plaintiff must simply prove that she has the basic skills necessary for the job or must prove she was performing her job in a

satisfactory manner.  *Haigh*, 632 F.3d at 469-70.  Although the Court indicated a preference for the view that the plaintiff need only prove she has the basic skills necessary for the job, it did not decide that issue because it found that the defendant articulated a legitimate, nondiscriminatory reason for the plaintiff's discharge.  *Id.* at 470.

The Eighth Circuit's recent decision in *Robinson v. American Red Cross*, --- F.3d ---, 2014 WL 2118710 (8th Cir. May 22, 2014) appears to conflict with the Court's view in *Haigh*.  In *Robinson*, the plaintiff had been suspended on two occasions based on a blood donor complaint of unprofessional behavior, yelling profanities in the blood donor room, and making false accusations against co-workers regarding an incident in which she refused to follow a superior's instructions.  *Robinson*, 2014 WL 2118710, at *4.  The plaintiff was terminated for having created a hostile work environment which compromised service to blood donors.  *Id.*  Based on those facts, the Eighth Circuit found that plaintiff failed to meet her employer's legitimate expectations.  *Id.*

Here, it is not necessary for this Court to decide whether plaintiff was meeting the legitimate expectations of her employer, because the circumstances do not give rise to an inference of religious discrimination.  Plaintiff has not identified any similarly situated SFMC employees outside of her protected class who were treated more favorably than plaintiff.  Plaintiff has not provided any evidence that SFMC treated her differently than non-Jewish employees.  Additionally, plaintiff can only point to one comment, made by a co-worker, about the Jewish faith that offended her during her approximately sixteen years of employment with SFMC.  Further, there is no evidence of biased comments related to plaintiff's religion by Salter, who made the final decision to discharge plaintiff.

11

Plaintiff has not offered any evidence that Salter ever made any discriminatory comments about the Jewish faith during her employment with SFMC.

In support of her argument that the circumstances permit an inference of religious discrimination, plaintiff relies heavily on temporal connection. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Stuart v. General Motors Corp.*, 217 F.3d 621, 635 (8th Cir. 2000). Although plaintiff's initial complaint occurred in late February or early March 2012 and she was discharged in June 2012, plaintiff argues that Miller "began ridding herself of the lone Jew within a day of becoming plaintiff's sole supervisor." Other than the alleged temporal connection, plaintiff alleges that "the hospital continues to employ nurses and, to Miller's knowledge, no Jews since plaintiff was fired." However, there is no support in the record for this allegation. Plaintiff points to Miller's offensive comment as evidence that Miller had a negative, stereotyped view of Jews. The crux of plaintiff's case is an alleged inference of religious discrimination based on Miller's offensive comment that she was going to try to "Jew" down, or had "Jewed" down, the seller of a camper to a lower price and the fact that Miller became plaintiff's supervisor shortly before plaintiff's discharge. The Court finds, however, that Miller's single, isolated, offensive comment is insufficient to support an inference of religious discrimination. Further, Salter, not Miller, made the decision to discharge plaintiff. There is no evidence of biased comments or actions related to plaintiff's religion by Salter. As a result, plaintiff cannot establish a prima facie case of religious discrimination.

Even if this Court assumed, *arguendo*, that plaintiff could establish a prima facie case for religious discrimination, defendant SFMC has established a legitimate, nondiscriminatory reason for the decision to terminate plaintiff's employment. The undisputed facts evidence that plaintiff was discharged in accordance with the SFMC Progressive Corrective Action Policy. Pursuant to the SFMC Progressive Corrective Action Policy, an employee is discharged if he or she incurs a total of twelve points for offenses committed within a twelve month period. Again, plaintiff's June 2012 discharge form references a total of twelve disciplinary points including: (a) seven disciplinary points for two complaints made in May 2012 and June 2012 by patients or the families of patients concerning rude behavior by plaintiff; (b) three disciplinary points for five unscheduled absences within twelve months; and (c) two disciplinary points for two May 2012 instances of reluctance, disinterest, and/or neglect in carrying out responsibilities. The undisputed evidence establishes that in discharging plaintiff, Salter, in consultation with Human Resources, applied the SFMC Progressive Corrective Action policy.

Plaintiff has not presented any evidence, apart from her own sheer speculation, that SFMC's reason for terminating her employment was a pretext for illegal discrimination, or which creates an inference that religious discrimination was the real reason for the termination. Although plaintiff takes issue with the assessment of some of the disciplinary points, she does not dispute that she was assessed twelve disciplinary points as stated in the discharge form. Plaintiff's dispute with SFMC's application of its policies does not establish pretext. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination

was the real reason." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (internal quotations omitted). The federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 2004). As long as defendant SFMC had a good faith basis for discharging plaintiff, it does not matter whether it correctly concluded that plaintiff committed violations of company policies. *Bone*, 686 F.3d at 955.

Plaintiff has failed to present any evidence of religious discrimination. Instead, the uncontroverted evidence shows that the termination of plaintiff's employment was a direct result of plaintiff's violations of SFMC policies. Plaintiff has not presented any evidence of religious bias by Salter, as the final decision maker for her discharge, or any evidence of disparate treatment. This Court concludes that plaintiff has not shown any circumstances that give rise to a reasonable inference of religious discrimination with regard to the termination of plaintiff's employment. Further, defendant SFMC has established a legitimate, nondiscriminatory reason for plaintiff's discharge and plaintiff has not produced any evidence that SFMC's proffered reason is a pretext for unlawful discrimination. Therefore, defendant SFMC is entitled to judgment as a matter of law on plaintiff's claim of religious discrimination under Title VII.

## 2. Retaliation

Plaintiff contends she was discharged for her complaints about Miller's offensive comment and that she suffered a hostile work environment following her complaint about Miller's offensive comment. As with a discrimination claim, to survive a motion for summary judgment, plaintiff must present direct evidence of retaliation or create an inference of retaliation under the burden-shifting framework established in *McDonnell Douglas*. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Absent direct evidence of retaliation, the burden-shifting framework is applied in the same manner as with a discrimination claim.

Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice [by Title VII] . . . or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e-3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Barker v. Missouri Dept. of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008). Plaintiff claims protection under the opposition clause, "which shields an employee against discrimination because [s]he has opposed a practice made unlawful by Title VII." *Id.* The Eighth Circuit has interpreted

this provision "to encompass actions that oppose employments actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Id.* (internal quotations and citation omitted).

To establish a prima facie case of unlawful retaliation, plaintiff must establish that (1) she engaged in protected activity, (2) her employer took an adverse action against her, and (3) the adverse action was causally linked to the protected activity. *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative – not merely motivating – factor in the employer's adverse employment decision.'" *Id.* (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)).

"If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (2011) (quoting *Fercello*, 612 F.3d at 1077-78). "An employee can prove that his employer's articulated justification for an adverse employment action is pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* "Either route amounts to showing that a prohibited reason, rather than

the employer's stated reason, actually motivated the employer's action." *Id.* (quoting *Torgeson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

As with her religious discrimination claim, plaintiff has not presented any direct evidence of discriminatory treatment based on retaliation. As a result, her claim of retaliation is also analyzed under the *McDonnell Douglas* burden-shifting framework. SFMC argues that plaintiff's retaliation claim fails because she was not engaging in protected activity and the evidence does not establish a causal relationship between her complaints and her discharge.

SFMC contends that plaintiff's complaint about Miller's offensive comment is not protected activity because the single derogatory comment was not an unlawful employment practice under Title VII and plaintiff did not have a good faith, objectively reasonable belief that the conduct violated Title VII. Plaintiff argues the comment constituted harassment pursuant to the SFMC Harassment Policy and that the policy provided her a good faith, objectively reasonable belief that the conduct violated Title VII.

Additionally, plaintiff argues that the Court should find that she had a good faith, objectively reasonable belief of a Title VII violation because she complained about a hostile work environment approximately six weeks after Miller's offensive comment. Plaintiff cannot establish she engaged in protected activity simply by submitting that she made a vague, unsupported complaint of a hostile work environment. Plaintiff alleges that during that time her co-workers gave her the cold shoulder Plaintiff also claims that Miller asked her why she had complained to their supervisor and accused plaintiff of

trying to get Miller in trouble. There is no evidence of anything offensive said to plaintiff, or in her presence, based on her religion during this six week period.

"Harassment standards are demanding." *Arrahleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006). "Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." *Id.* (internal quotations and citations omitted). "A recurring theme to be derived from these cases 'is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Brannum v. Missouri Dept. of Corrections*, 518 F.3d 542, 548 (8th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). For a retaliation claim, although the action opposed is not required to be unlawful, the foregoing standards assist the Court in determining whether plaintiff had a good faith, objectively reasonable belief that the conduct was unlawful.

In *Brannum v. Missouri Dept. of Corrections*, the Court found that a single, relatively tame comment was insufficient as a matter of law to support an objectively reasonable belief of unlawful sexual harassment. *Id.* at 548-49; *see also Bakhtiari v. Lutz*, 4:04CV01071AGF, 2006 WL 2664383 (E.D. Mo. Sept. 15, 2006) (finding that no reasonable person would have believed that derogatory remarks and/or conduct on one occasion violated Title VII). As a result, the Court held that the plaintiff did not engage in protected activity as required to establish a prima facie case of retaliation and affirmed

the district court's grant of summary judgment in favor of the employer on plaintiff's

Title VII retaliation claim. *Brannum*, 518 F.3d at 549-550.

Here, it may be reasonable to believe that plaintiff had a good faith belief that

Miller's offensive comment was discriminatory in violation of Title VII. However, even

if plaintiff was engaged in protected activity, plaintiff fails to establish that her discharge

was causally linked to that protected activity. There is no evidence that plaintiff's

complaint about Miller's offensive comment was a determinative factor in the decision to

terminate her employment. Further, as discussed above, the uncontroverted evidence

before this Court establishes a legitimate, nondiscriminatory reason for the termination of

plaintiff's employment. Again, plaintiff has not produced any evidence that defendant

SFMC's proffered reason for plaintiff's discharge is a pretext for unlawful

discrimination. Plaintiff's violation of SFMC policies is without question a legitimate,

nondiscriminatory reason for her discharge. As a result, defendant SFMC is entitled to

judgment as a matter of law on plaintiff's claim of discrimination based on retaliation

under Title VII.

### B.     MHRA claims – Defendants SFMC and Miller

Because plaintiff asserts claims of discrimination and retaliation under the MHRA,

the Court looks to Missouri law in resolving defendants' motion on those claims. [4]

---

[4] "Missouri cases have only allowed for individual liability under the MHRA when the individuals directly oversaw or were actively involved in the discriminatory conduct." *Reed v. McDonald's Corp.*, 363 S.W.3d 134, 139 (Mo. App. E.D. 2012). The Court does not make a finding on whether Miller directly oversaw or was actively involved in the discriminatory conduct. Instead, for purposes of the MHRA claims the Court chooses to address the claims against SFMC and Miller collectively.

Discrimination and retaliation claims under the MHRA must be established by showing elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. *Hill v. Ford*, 277 S.W.3d 659, 664-65 (Mo. banc 2009). Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual based on religion. Section 213.055(1)(a) RSMo. The MHRA defines "discrimination" as "any unfair treatment based on [… religion, …] as it relates to employment." Section 213.010(5) RSMo. Further, it is unlawful "to retaliate or discriminate in any manner against any other person" because such person has opposed any practice prohibited by section 213.055. Section 213.070 RSMo.

For a discrimination claim under the MHRA, plaintiff must establish (1) plaintiff was discharged, (2) plaintiff's religion was a contributing factor in her discharge, and (3) plaintiff suffered damage as a direct result of the discharge. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007) (citing Missouri Approved Instruction 31.24).[5] Retaliation for opposing discrimination or for filing a complaint also constitutes discrimination under the MHRA. *Hill v. Ford Motor Co.,* 277 S.W.3d 659, 664–65 (Mo.2009). To establish a case of retaliation under the MHRA, a plaintiff must prove (1) she complained of a practice prohibited by the MHRA, (2) the employer took adverse action against her, and (3) a causal relationship existed between the complaint and the adverse action. *McCrainey v. Kansas City Missouri School Dist.*, 337 S.W.3d 746, 753 (Mo. App. W.D. 2011).

---

[5] MAI 31.24 has been withdrawn and replaced by MAI 38.01.

In *Daughterty*, the Missouri Supreme Court noted that the MHRA's discrimination safeguards "are not identical to the federal standards and can offer greater discrimination protection." *Daughterty*, 231 S.W.3d at 819. The court instructed that courts should be "guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law." *Id.* at 818. Additionally, the court held that a discrimination claim survives summary judgment if there is a genuine issue of material fact as to whether the discriminatory act was a contributing factor in defendant's termination decision." *Id.* at 820. Missouri courts have defined "contributing factor" as "one that contributed a share in anything or has a part in producing the effect." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. App. E.D. 2009).

Plaintiff lacks any evidence that gives rise to an inference that her Jewish faith was a contributing factor in the decision to terminate her employment after approximately sixteen years of employment with SFMC. The evidence reflects Salter applied the SFMC Progressive Corrective Action policy with respect to plaintiff's numerous violations of SFMC policies. There is no evidence that Salter, the final decision maker as to plaintiff's discharge, had any bias against plaintiff due to her religious affiliation. Thus, plaintiff cannot establish her religion was a contributing factor in the discharge decision.

For a retaliation claim under the MHRA, plaintiff must have a reasonable, good faith belief that there were grounds for a claim of discrimination or harassment. *McCrainey*, 337 S.W.3d at 753. Plaintiff argues that she had a reasonable, good faith belief that the conduct she opposed, Miller's offensive comment and the alleged hostile work environment, violated the MHRA. Despite Plaintiff's contention that she was being

subjected to a hostile work environment, plaintiff does not have evidence of anything said to her or in her presence that was offensive related to her religion. Plaintiff merely makes vague, conclusory statements that some members of the staff gave her "the cold shoulder" over a period of several weeks. Plaintiff does not provide evidence that she was actually subjected to any behavior that could even arguably be considered the kind of behavior that creates a hostile work environment. Yet it may be reasonable to believe that plaintiff had a good faith belief that Miller's offensive comment was a violation of the MHRA. However, even if plaintiff was engaged in protected activity, plaintiff fails to establish that her discharge was causally linked to her protected activity.

The evidence does not establish a causal relationship between plaintiff's complaints and her discharge. It is clear that plaintiff's discharge was the result of documented patient complaints, attendance policy violations, and negligent performance of her job duties that merited discharge pursuant to the clear terms of the SFMC Progressive Corrective Action Policy. Plaintiff has offered nothing more than her own sheer conjecture that her discharge was because of her complaints, which is insufficient to establish discrimination even under the MHRA's broader standard. Consequently, plaintiff cannot establish that her complaints were a contributing factor in the decision to discharge her.

There is no evidence before this Court that religion or retaliation was a contributing factor in the decision to discharge plaintiff. It is also clear that plaintiff's discharge was a direct result of plaintiff's violations of SFMC policies and that discharge was proper under SFMC's Progressive Corrective Action Policy. For these reasons,

defendants are entitled to judgment as a matter of law on plaintiff's claims of religious discrimination and retaliation under the MHRA.

## IV.  Conclusion

There are simply no facts in the record before this Court to suggest that plaintiff's religion or her complaints were the reasons for, or even a contributing factor in, the decision to terminate plaintiff's employment. Additionally, the legitimate, non-pretextual reason for the termination of plaintiff's employment is evident.  As a result, defendants are entitled to judgment as a matter of law on plaintiff's claims of religious discrimination and retaliation under Title VII and the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to strike defendant's response to plaintiff's statement of material facts (ECF #57) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (ECF #37) is **GRANTED**.

**IT IS FINALLY ORDERED** that judgment is entered in favor of defendants. A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of June, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE